IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 8 2009

CLERK OF COURT
LAREDO DIVISION

| | | |
|---|---|---|
| JOEL OLMEDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. L-08-61 |
| | § | |
| KIEWIT TEXAS CONSTRUCTION L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Kiewit Texas Construction L.P.'s ("Kiewit") Motion for Summary Judgment (Dkt. No. 23). Also pending is Kiewit's motion to strike all or part of three affidavits filed by Plaintiff with his Response to the summary judgment motion (Dkt. No. 28), and Kiewit's motion for permission to cite and rely on two depositions it took, with Olmedo's agreement, after the discovery deadline had passed (Dkt. No. 30).

I. Plaintiff's Claims

On April 25, 2008, Olmedo, acting pro se, filed a two-page, form employment discrimination complaint. On the form, Olmedo checked boxes indicating that he was terminated based on race. There are also handwritten statements on the form stating that Anglo supervisors tried to get him fired by planting beer cans in his truck and that he told someone to stop calling the

1

Mexicans "mojados" (wetbacks), "retarded," and "caca" (shit). (Dkt. No. 1 at 2.)

Olmedo also filed several Spanish-language documents including a forty-plus-page, unsworn, unverified, handwritten document, composed somewhat like a personal work diary. At his deposition Olmedo insisted that this document was not a diary or journal, as Kiewit views it, but "a filing" and a "complaint that was filed." (Pl.'s Dep. 22:15-23:11; 35:15-36:11, Jan. 13, 2009.) Filing an untranslated foreign-language pleading of that length is unacceptable, but inasmuch as Olmedo is pro se, and Kiewit has volunteered a sworn, certified translation (Dkt. No. 29, Ex. 1), the Court tried to glean Olmedo's assertions from this document ("the Filing") and from the form Complaint. Olmedo alleges a number of difficult work conditions/experiences, including his supervisor, David Fortner, using racial slurs at him and other coworkers on two occasions, but his basic complaint seems to be that he was discharged in retaliation for reporting safety violations, namely Fortner's drinking beer during work hours.

The Court also examined Olmedo's charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2007 (Dkt. No. 1 at 63), and his deposition testimony. On the EEO charge form, Olmedo checked the retaliation and national origin boxes. Olmedo explained the

particulars of his alleged discrimination as being discharged "in retaliation for reporting [his supervisor] of safety violations" and subjected "to unwelcome comments due to may [sic] national origin." (Dkt. No. 1 at 63.) At his deposition, Olmedo discussed such comments once but repeatedly stated his belief that he was discharged for reporting his supervisor's drinking habits. For example, he stated, "I was fired just because I filed a complaint against David Fortner." (Pl.'s Dep. 25:18-19; see also id. 25:5-10, 15-20; 27:21-24; 32:1-21; 46:8-47:2.)

After review of the pleadings, EEO charge, and deposition testimony, the Court construes Olmedo's allegations to claim retaliation for reporting safety violations and possibly a discharge based on national origin. Further, it appears that Olmedo invokes Title VII of the Civil Rights Act of 1968 as the statutory vehicle to obtain relief.

II. Facts

Based primarily from deposition testimony, the Court determines the essential facts to be as follows:

Olmedo worked for Kiewit from March to October, 2007. He operated a water truck and a dump truck on various road construction projects in the Laredo, Texas area. (Kuntz Aff. ¶ 3.) His job consisted of, among other things, spraying water at construction sites for dust control and to change moisture

3

content.  (Id.)   David Fortner supervised Olmedo's work on several of these construction projects.

In early April of 2007, Olmedo complained to Fortner "as to why he called us [Mexicans] wetbacks and cacas," but on that occasion, "found him drunk." (Pl.'s Dep. 27:21-23.) In his Filing, Olmedo further describes this incident as follows:

> "What happened David?  You are a supervisor to be drinking [sic] it is 6:45 AM.  This can't be.  Let's go to the Laredo Plant to report this, because that is why you make fun of us."  David . . . was silent.  He didn't know what to do.  They were always drunk. . . . David gets down and grabs me by the neck on the back. . . . and tells me to give [him] a chance.  That we were working and would be working together always. That we were almost finished and . . . [t]hey were going to give us more bonuses and for me to calm down, not to say anything.  I went back and told him to treat us in a different manner.[1]

(Dkt. No. 29-2, at 3.)  Ultimately, Olmedo did not report this incident until about seventeen days later, and he reported only that he had found Fortner and another worker drinking, mentioning nothing about racial insults/harassment. (Id. at 5.)

Months later, during a September 17, 2007, safety meeting, Olmedo found an ice chest full of Bud Light beer in Fortner's truck. (Pl.'s Dep. 34:10-36:11.) That same day, he reported this fact in a written complaint to Holly Stringer ("the Stringer complaint"), Kiewit's U.S. Department of Transportation

---

[1] While a pleading is not typically summary judgment evidence, these allegations constitute judicial admissions by the pleader, and the Court may consider them as such.

Compliance Officer.[2]  (Id.; Kuntz Aff. ¶ 4.)  The Stringer complaint discussed the beer discovery and Fortner's yelling at Olmedo, as well as Olmedo's opinion that Fortner was lucky the Department of Public Safety ("DPS") did not find the beer when Fortner was stopped by a DPS officer on an earlier occasion.  It also states that "[Fortner] was drunk.  That's why he's always yelling at us.  When he doesn't drink, he's a good person, but if he drinks, watch out."  (Pl.'s Dep. 35:12-13.)

   Olmedo was fired on October 19, 2007.  (Kuntz Aff. ¶ 6.)  On that date, Olmedo found two empty bottles of Bud Light beer in his truck, and thought Fortner, or someone directed by Fortner, moved his truck without permission and planted the beer bottles to get him in trouble.  (Pl.'s Dep. 38:1-5.)  Olmedo immediately notified Tim Dutton, Kiewit's Project Safety Engineer.  (Kuntz Aff. ¶ 4.)  While Dutton was investigating the incident, Fortner called Olmedo over the radio to ask where he was.  Olmedo began yelling expletives at Fortner.  Ryan Kuntz, Kiewit's Project Superintendent, overheard Olmedo yelling on the radio and, later that day, called Olmedo into his office.  There, he terminated Olmedo's employment for "repeated violation of Kiewit's workplace rules and his inappropriate outburst on

---

[2] An uncertified translation of the Stringer complaint is part of the record. (Dkt. No. 23, Ex. E.)

Kiewit's radio network."[3] (Pl.'s Dep. 45:24-49:13; Kuntz Aff. ¶¶ 5-7.)

On February 6, 2008, after investigating the charge of discrimination that Olmedo filed in November 2007, the EEOC issued a Notice of Dismissal and Rights as well as a letter explaining to Olmedo that it found insufficient evidence to support his allegation of national origin discrimination. (Dkt. No. 1, at 56.) Subsequently, Olmedo timely filed this suit.

III. Docket No. 30

Kiewit moves for permission to cite and rely on the deposition testimony of Sabino Lugo and Agapito Facundo. (Dkt. No. 30.) The depositions were taken, with Olmedo's agreement and presence, after the discovery deadline. (See Lugo Dep. 4:12-15, Mar. 20, 2009; Facundo Dep., Mar. 20, 2009.) Olmedo filed no response to the motion. While discovery deadlines are useful, they are not cast in stone. The Court finds no prejudice to Olmedo, especially in light of Olmedo's agreement that the depositions take place.

IV. Docket No. 28

Olmedo filed three affidavits with his Response to the motion for summary judgment. Kiewit moved to strike them, in whole or in part, as either not properly authenticated or as

---

[3] Olmedo had previously been suspended for running a red light in his fully loaded water truck. (Kuntz Aff. ¶ 6.) Kuntz states he had also counseled Olmedo for sleeping on the job earlier, on October 12, 2007. (Id.)

6

containing inadmissible summary-judgment evidence. (Dkt. No. 28.) Olmedo filed no response. After review, the Court finds some merit in Kiewit's objections, but no useful purpose is served by purporting to strike the affidavits. The Court has necessarily been required to read the affidavits and is able to assign them their proper weight and consideration.[4]

V. Docket No. 23

Kiewit's motion for summary judgment construes Olmedo's Complaint to have alleged two claims under Title VII, retaliatory discharge for making a safety violation report and a hostile work environment based on race.

A. Retaliatory Discharge[5]

As noted above, Olmedo's basic complaint is that he was discharged in retaliation for reporting safety violations, i.e., Fortner's beer drinking habits.[6] While Olmedo certainly establishes a colorable case of discharge for reporting safety violations, that would not be a violation of Title VII. That

---

[4] An analysis of the affidavits is attached to this Memorandum. Suffice to say that, for the reasons stated in the Attachment, the affidavits are insufficient to support a valid claim in this case.

[5] To establish a prima facie case of unlawful retaliation, Olmedo must show that 1) he engaged in protected activity, 2) an adverse employment action occurred, and 3) a causal link exists between his protected activity and the adverse employment action. Strong v. Univ. Healthcare Sys., 482 F.3d 802, 805 (5th Cir. 2007).

[6] Olmedo twice complained of Fortner's violations before being discharged, once in April and again in September. Both complaints concerned Fortner's drinking habits and mentioned nothing about racial comments or harassment. (See Pl.'s Dep. 35:10-39:6; Dkt. No. 1 at 63.) Complaints that fail to even mention unlawful discrimination or harassment do not constitute protected activities. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 342 (5th Cir. 2007).

7

statute is designed to remedy discrimination based on race, color, religion, sex, or national origin, 42 U.S.C. §2000e <u>et seq</u>., not one's report of a safety violation.[7] Moreover, there is no evidence that Kuntz, who actually fired Olmedo, knew about Olmedo's safety violation complaints, especially the Stringer complaint. (<u>See</u> Kuntz Aff. ¶ 8; Pl.'s Dep. 47:1-20.)

B. <u>Hostile Work Environment</u>

The theory of a hostile work environment typically arises in a claim that harassment on the job is so severe or pervasive as to alter the conditions of employment and create an abusive working environment. <u>See</u> <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002) (explaining how severe harassment must be to affect "a term, condition or privilege of employment"). Generally, a plaintiff will claim that this type of work environment forced him to resign from his job, i.e., constructive discharge. Here, Olmedo does not allege that he resigned; he admits that he was fired. In any event, Olmedo would have to show that the harassment was racial in nature and severe/pervasive enough to affect a term, privilege, or

---

[7] Federal law does prohibit retaliation against employees who report safety violations to the Occupational Safety and Health Administration, but there is no private right of action for such claims. <u>George v. Aztec Rental Ctr.</u>, 763 F.2d 184, 187 (5th Cir. 1985). Texas also prohibits retaliation for reports of safety violations, but only if those reports are made via a hotline maintained by the Workers Compensation Commission. Tex. Lab. Code Ann. § 411.082 (Vernon 2006). Otherwise, Texas does not recognize a wrongful discharge claim for employees of private employers on the basis of internal "whistleblowing." <u>Austin v. Healthtrust, Inc.</u>, 967 S.W.2d 400, 401-03 (Tex. 1998).

8

condition of his employment. <u>Frank v. Xerox Corp.</u>, 347 F.3d 130, 138 (5th Cir. 2003). The evidence in this case cannot support such a finding.

Olmedo must first identify conduct that was "based on race or had a racial character or purpose." <u>Watkins v. Texas Dep't of Criminal Justice</u>, No. 06-20843, 2008 WL 686571, *5 (5th Cir. Mar. 12, 2008); <u>Padilla v. Carrier Air Conditioning</u>, 67 F. Supp. 2d 650, 661 (E.D. Tex. 1999). Olmedo presents deposition testimony identifying multiple incidents of harassment by Fortner.[8] Most of those incidents, however, fail to relate to his race, and/or were reportedly experienced by Anglo and Mexican employees alike. (<u>E.g.</u>, Facundo Dep. 20:10-22:14.) The only incident suggesting a racial bias is Fortner's calling the Mexican employees "wetbacks and cacas."[9] (Pl.'s Dep. 27:22.) There is no evidence that this type of harassment occurred multiple times.[10]

---

[8] The incidents include Fortner rushing Olmedo to get to work (Pl.'s Dep. 46:7-8), rushing Olmedo when he was defecating (<u>id.</u> at 50:6-10; 63:15-21), not letting him go to the bathroom and reprimanding him for eating at a gas station (<u>id.</u> at 60:5-10), putting beer cans in his truck (<u>id.</u> at 25:8-9), reprimanding him for taking too long to fill the water truck (<u>id.</u> at 34:18-35:7), and working him long hours (<u>id.</u> at 63:22-23).
[9] The Filing alleges a second incident involving racial animus. When Olmedo told his a supervisor named Adrian about how well he and his coworkers did on a project, Adrian agreed but added, "[c]onsidering it was done by Mexicans." (Dkt. No. 29-2 at 8-9.) However, there is no summary judgment evidence to support this allegation.
[10] Olmedo's affidavits attempt to create a basis for more frequent and severe racial harassment, but as discussed in the Attachment, even giving some credence to these affidavits, they are inadequate to support a hostile work environment claim.

9

Occasionally calling Olmedo and other employees "wetbacks" or "cacas" falls far short of the type of severe or pervasive harassment required by Title VII to state a hostile work environment claim. In <u>Shepherd v. Comptroller of Public Accounts</u>, a hostile work environment was not established when the plaintiff's allegations included instances of a male coworker standing at her desk and saying "your elbows are the same color as your nipples," simulating looking under her dress and saying "you have big thighs," on two occasions patting his lap while saying "here's your seat," attempting to look down her clothes several times, on several occasions rubbing one of his hands from her shoulder down to her wrist, etc., over a two-year period. 168 F.3d 871, 872-73 (5th Cir. 1999)  The Fifth Circuit found that the conduct, though offensive, was not severe or extreme enough to prevent the plaintiff from succeeding in the workplace. <u>Id</u>.

Other Title VII plaintiffs, who objectively and subjectively experienced more offensive treatment than Olmedo, have also failed to establish this element. <u>See, e.g.</u>, <u>Hockman v. Westward Commc'ns, LLC</u>, 407 F.3d 317, 321-22 (5th Cir. 2004) (supervisor's comments about employee's "nice behind and body," attempt to kiss her, standing in doorway of bathroom and watching her wash her hands, patting her behind with a newspaper, and brushing up close to her body to feel her

10

breasts, were not severe and pervasive enough for a hostile work environment claim);[11] <u>Padilla</u>, 67 F. Supp. 2d 650 (supervisor calling plaintiff "black yankee" and "son," making insulting jokes about three, black political leaders, and calling coworker a "nigger" were "not so numerous and opprobrious as to constitute a hostile work environment"). Put simply, sporadic racial or other discriminatory comments during casual conversation do not establish the necessary elements for a prima facie hostile work environment case. <u>Roberts v. Texas Dept. of Human Services</u>, 275 F.3d 1083 (5th Cir. 2001).

C. Discriminatory Discharge

If the Court were to interpret Olmedo's claim as being discharged for an improper discriminatory reason, he must show that he was a member of a protected class, qualified for the position, subjected to an adverse employment action, and treated differently from others similarly situated. <u>Abarca v. Metro Transit Auth.</u>, 404 F.3d 938, 940 (5th Cir. 2005). No one disputes that Olmedo is a member of a protected class, based on race or national origin, or that he was qualified for his position. Also, Olmedo and Kiewit both admit he was fired. However, the record does not indicate that a similarly situated

---

[11] A year after <u>Hockman</u>, the Fifth Circuit clarified that the correct standard is severe <u>or</u> pervasive, not <u>Hockman's</u> statement of the standard as severe <u>and</u> pervasive. <u>Harvill v. Westward Commc'ns, LLC</u>, 433 F.3d 428, 435 (5th Cir. 2005).

employee, doing the same conduct as Olmedo, was treated differently.

In any event, Kiewit articulated three legitimate, nondiscriminatory reasons for firing Olmedo: his sleeping on the job, running a red light in a work truck, and yelling obscenities over a work radio. (Kuntz Aff. ¶¶ 5-7.) Olmedo admits running a red light and yelling expletives over the radio, and concedes that it was reasonable for Kuntz to think he was sleeping. (Pl.'s Dep. 45:24-49:13.) Thus, Olmedo cannot show that Kiewit's reasons are pretextual.

As to the possible existence of an unlawful motive, relevant to a mixed-motive analysis, a general hostility due to race/national origin is apparent in Fortner's conduct, but there is no indication that Kuntz bore a similar hostility. The best evidence Olmedo offers is his testimony that Kuntz and Fortner were friends and drinking buddies. (Id. 46:20-48:2.) This is not sufficient evidence.

In sum, the record indicates that Olmedo repeatedly complained of Fortner's drinking habits and that any mistreatment he experienced was motivated more by retribution for making safety violation reports than any racial animus. On this record, therefore, there is no genuine issue of material fact on any issue that would support Olmedo's claims.

12

## Conclusion

Kiewit's motion to cite to and rely on certain deposition testimony (Dkt. No. 30) is GRANTED. Kiewit's motion to strike Olmedo's three affidavits (Dkt. No. 28) is DENIED. Kiewit's motion for summary judgment (Dkt. No. 23.) is GRANTED.

DONE at Laredo, Texas, this 28th day of September, 2009.

*George P. Kazen*
Senior United States District Judge